UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MELAYNA LOKOSKY, <br><br>    Plaintiff-Relator, <br><br>  v. <br><br>ACCLARENT, INC., <br><br>    Defendant. | Civ. A. No. 1:11-cv-11217-DLC <br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM IN SUPPORT OF NON-PARTIES
WILLIAM FACTEAU AND PATRICK FABIAN'S JOINT MOTION TO QUASH**

On July 18, 2018, Plaintiff Melayna Lokosky ("Plaintiff") served deposition and document subpoenas on non-parties William Facteau and Patrick Fabian ("the non-parties"), notwithstanding that Mr. Facteau and Mr. Fabian made clear their intent to invoke their Fifth Amendment right not to testify regarding Acclarent's Relieva Stratus Microflow Spacer ("Stratus") while they remain under indictment for Stratus's alleged misbranding and adulteration.  The non-parties therefore move that the Court quash Plaintiff's subpoenas.

Any deposition of Mr. Facteau or Mr. Fabian would be an exercise in futility.  *See Cowans v. City of Boston*, No. 05-cv-11574-RGS, 2007 WL 28419, at *2 (D. Mass. Jan. 4, 2007) (refusing to compel a similarly futile deposition because "it would amount to harassment and only serve to unreasonably annoy and embarrass the [witness] . . . should the [witness] be subjected to two hours (or more) of questions to which the defendant would be validly asserting his rights against self-incrimination" (citation omitted)); *see also In re New England*

*Compounding Pharm., Inc. Prods. Liab. Litig.*, No. 13-md-2419, 2015 WL 13715289, at *8 (D. Mass. July 31, 2015) ("*NECC*") (staying depositions indefinitely because, "[g]iven the significant overlap between the civil and criminal actions, any attempt . . . to depose the defendants in the criminal case will necessarily implicate their Fifth Amendment rights.").

The document subpoenas should likewise be quashed for the additional reason that they are disproportionate to the needs of the case. The subpoenas are overbroad, much of the requested information is available from the parties directly, and requiring Mr. Facteau and Mr. Fabian to search for, review, and produce the requested documents places an impermissible undue burden on them as non-parties. *See* Fed. R. Civ. P. 26 & 45.

Accordingly, the subpoenas should be quashed.

## RELEVANT BACKGROUND

Mr. Facteau is a former CEO of Defendant Acclarent. He left Acclarent at the end of 2011 and is not a party to this case. Mr. Fabian is a former Vice President of Sales of Acclarent. He left Acclarent in 2010 and is not a party to this case.

Mr. Facteau and Mr. Fabian are defendants in *United States v. Facteau, et al.*, No. 15-cr-10076-ADB (D. Mass.). The charges in that case center on allegations of off-label promotion of an Acclarent sinus implant device known as the "Stratus." Plaintiff's allegations of off-label promotion in the instant case are identical to the charges in the criminal case. *See* Pl.-Relator[] Melayna Lokosky's Opp'n to Mot. to Dismiss Compl. at 1, Dkt. No. 74 (Nov. 28, 2016) (linking Plaintiff's allegations about misbranding to the misbranding charges in the criminal case).

The criminal case against Mr. Facteau and Mr. Fabian went to trial in 2016. Neither defendant testified at trial. The jury acquitted Mr. Facteau and Mr. Fabian of all felony counts, but convicted them of ten misdemeanor counts of misbranding and adulteration of Stratus. Mr.

Facteau and Mr. Fabian have jointly moved for a judgment of acquittal or new trial on those ten misdemeanor counts; that motion remains pending. Accordingly, neither Mr. Facteau nor Mr. Fabian has been sentenced. No appeal has yet been taken. No final judgment of conviction has been entered.

Plaintiff noticed the depositions of Mr. Facteau and Mr. Fabian with the stated intent of questioning them about Acclarent's Stratus promotion strategy and alleged "compliance concerns" regarding Stratus. Email from Ilyas Rona to Noreen Russo, *et al*. (July 19, 2018 1:20 PM) (Ex. 1). Plaintiff's attempted justification of the deposition does not make any claim that Mr. Facteau or Mr. Fabian was involved in Plaintiff's termination. *Id.* Instead, Plaintiff seeks to subject criminal defendants to questioning about the same subjects of their Indictment, notwithstanding Mr. Facteau and Mr. Fabian's representations to counsel that, if questioned at all, each would exercise his Fifth Amendment right against self-incrimination. Any deposition would force these two criminal defendants to spend hours invoking the Fifth Amendment in response to any relevant question.

Plaintiff seeks more than deposition testimony from Mr. Facteau and Mr. Fabian; she also served them with document subpoenas seeking:

1. All communications, including email and text, with any person concerning Melayna Lokosky.
2. All communications, including email and text, with any person affiliated with Endogastric Solutions, Inc.
3. All communications, including email and text, concerning the identity of any whistleblowers at Acclarent, or any claims brought by a whistleblower.
4. All communications with Josh Makower, Gary Pruden, Robert Croce, or [Patrick Fabian/Bill Facteau], after March 1, 2010.
5. All documents you produced to the government in connection with your criminal prosecution or any criminal or civil investigation into Acclarent, Inc.

3

Plaintiff gave Mr. Facteau and Mr. Fabian approximately ten days to produce responsive documents and appear for their respective depositions. *See* Subpoena to Testify at a Deposition in a Civil Action (William Facteau) (July 16, 2018) (Ex. 2); Subpoena to Testify at a Deposition in a Civil Action (Patrick Fabian) (July 16, 2018) (Ex. 3). Plaintiff brought this time crunch upon herself—and upon Mr. Facteau and Mr. Fabian—by waiting until the end of the discovery period (despite prior extensions of the deadlines) to serve the subpoenas. For reasons of untimeliness, as well as undue burden, Fed. R. Civ. P. 45, Mr. Facteau and Mr. Fabian move that the Court quash the document subpoenas as well.

## **LEGAL STANDARD**

*Obligations of a Party Seeking Discovery*

Fed. R. Civ. P. 45(d)(1) provides that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." That rule further provides that the court "*must* quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; . . . or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(a) (emphasis added).

*Permissible Scope of Discovery*

Fed. R. Civ. P. 26(b) outlines the scope of permissible discovery. Following amendments in 2015, Rule 26(b)(1) now provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any *nonprivileged matter* that is relevant to any party's claim or defense *and proportional to the needs to the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* (emphasis added).

Put another way, "[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. . . . Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Sci., Inc. v. Merck & Co., Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (denying motion to compel).

Rule 26(b)(2) states that the court:

> *must* limit the frequency or extent of discovery [if] (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* (emphasis added).

"[T]he importance of the information sought to the requesting party's case and the burden on the producing party must be assessed as part of the Court's relevance determination." *United Therapeutics Corp. v. Watson Labs., Inc.*, 200 F. Supp. 3d 272, 277 (D. Mass. 2016) (Cabell, M.J.). As this Court noted in *United Therapeutics*, "[w]hen it comes to assessing burden, courts are generally more solicitous of non-parties," and "'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight.'" *Id.* (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).

## ARGUMENT

**I.     Because the Non-Parties Are Entitled to Refuse to Answer All Relevant Questions on Fifth Amendment Grounds, the Depositions Should Not Proceed.**

The Fifth Amendment accords Mr. Facteau and Mr. Fabian the right not to testify about any subject that "might furnish a link in a chain of evidence sufficient to connect the [party being questioned] with a . . . crime." *Malloy v. Hogan*, 378 U.S. 1, 13 (1964) (affirming invocation of

Fifth Amendment). "If a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege may be appropriately invoked." *NECC*, 2015 WL 13715289, at \*6. "[A]n invocation of privilege should be sustained 'if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution.'" *Convertino v. U.S. Dep't of Justice*, 795 F.3d 587, 593 (6th Cir. 2015) (citation omitted); *see also In re Brogna*, 589 F.2d 24, 27 (1st Cir. 1978) ("The privilege against self-incrimination must . . . 'be accorded liberal construction in favor of the right it was intended to secure.'" (citation omitted)).

While a general (or "blanket") invocation of the privilege against self-incrimination is generally disfavored, *see, e.g.*, *NECC*, 2015 WL 13715289 at \*7, there are judicially recognized exceptions. *See id.* (citing *United States v. Ortiz*, 82 F.3d 1066, 1073 (D.C. Cir. 1996) and *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982) (recognizing exception where trial court "can conclude that the witness could 'legitimately refuse to answer essentially all relevant questions.'") (citation omitted)). Such a situation exists here.

In *NECC*, Judge Boal ruled that a general assertion of the Fifth Amendment privilege was the proper result "where 'there is a reasonable basis for believing a danger to the witness might exist in answering any relevant question.'" *NECC*, 2015 WL 13715289 at \*7; *accord Cowans*, 2007 WL 28419, at \*2 (holding that a general invocation of privilege is permissible where the potential deponent has already "shown a reasonable fear that his answers to questions regarding [the subject of the deposition] might be used against him in a criminal prosecution").

Plaintiffs in *NECC* sought depositions of multiple individuals while those individuals were facing criminal charges connected to alleged FDCA violations and related activities of the New England Compounding Center. In 2015, Judge Boal ruled that the depositions of the

individuals already under indictment could not proceed until the witnesses' criminal cases were "fully resolved," reasoning that "[g]iven the significant overlap between the civil and criminal actions, any attempt . . . to depose the defendants in the criminal case will necessarily implicate their Fifth Amendment rights." *NECC*, 2015 WL 13715289, at *8.

In 2017, the *NECC* plaintiffs renewed their attempts to depose two of the individuals following their respective conviction and guilty plea, but prior to sentencing or any subsequent appeal. Upon considering plaintiffs' renewed efforts, Magistrate Judge Boal came to the same conclusion as before: where the defendants' constitutional right to remain silent remained in place, the depositions could not go forward. *See* Electronic Order, *NECC*, Dkt. No. 3416 (July 5, 2017) (conviction or guilty plea not enough to "finally resolve[]" the criminal charges; original stay remained in effect).[1]

---

[1] The result in *NECC* is consistent with other courts' permission of a general assertion of the Fifth Amendment privilege where a witness could legitimately refuse to answer essentially all relevant questions because they regard the same topic as the witness's criminal exposure. *See, e.g.*, *United States v. Pratt*, 913 F.2d 982, 990 (1st Cir. 1990) (affirming acceptance of a general claim of privilege without individualized questioning because the subject matter of the witness's ongoing criminal case "was the same topic upon which [the defendant]'s attorney sought to examine him at trial"); *see also United States v. Ramos*, 763 F.3d 45, 55 (1st Cir. 2014) (permitting a general invocation of Fifth Amendment because requiring "a question-and-answer format" with particularized invocation "elevates the form of the inquiry over its substance"); *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982) (holding that while the Fifth Amendment is ordinarily raised only in response to specific questions, a general refusal is proper where the court, based on its knowledge of the case and the testimony expected by the witness, can conclude that the witness could legitimately refuse to answer "essentially all relevant questions"); *Gray v. Derderian*, No. 04-cv-312L, 2007 WL 2253497, at *3 & n.6 (D.R.I. Aug. 3, 2007) (holding that a general invocation was permitted based on the futility of a deposition when the witness's "criminal exposure was clear," but that a final judgment of conviction and fixed sentence meant that such a particularized inquiry was now possible); *Anton v. Prospect Café Milano, Inc.*, 233 F.R.D. 216, 219 (D.D.C. 2006) ("[A] district judge may sustain a general assertion of the Fifth Amendment privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering any relevant question.").

7

As in *NECC*, the Court here should conclude that Mr. Facteau and Mr. Fabian could "legitimately refuse to answer essentially all relevant questions." Plaintiff here alleges that she "was fired as a result of internal reporting and questioning of off-label marketing of a misbranded device." Pl.-Relator[] Melayna Lokosky's Opp'n to Mot. to Dismiss Compl. at 1, Dkt. No. 74 (Nov. 28, 2016). Mr. Facteau and Mr. Fabian continue to defend against charges involving off-label marketing and distribution of the same allegedly misbranded device. *See* Indictment ¶¶ 113-14, 143-44, *United States v. Facteau, et al.*, No. 15-cr-10076, Dkt. No. 1 (D. Mass. Apr. 8, 2015). Moreover, Plaintiff's counsel has made clear that they intend to question Mr. Facteau and Mr. Fabian regarding precisely the same matters at issue under the criminal charges, including Mr. Facteau and Mr. Fabian's "knowledge about the steps taken to make the Stratus 'catalogue only,'" their knowledge that the "catalogue only" policy "raised compliance issues," their knowledge that the "catalogue only" policy "left sales representatives 'confused' and 'scared,'" and an alleged "effort to disregard those compliance concerns and push forward with promotion." Email from Ilyas Rona to Noreen Russo, *et al*. (July 19, 2018 1:20 PM) (Ex. 1). In fact, *all* of the areas of inquiry for deposition identified by Plaintiff to date involve matters which remain *directly* at issue in the criminal case. Mr. Facteau and Mr. Fabian's continuing criminal case thus presents the same "significant overlap" with Plaintiff's enumerated deposition topics and, in respect of Mr. Facteau and Mr. Fabian's anticipated exercise of their respective constitutional rights, compel the same result reached in *NECC*: recognition of their legitimate, general assertion of privilege.

## II. That the Non-Parties Have Gone to Trial Does Not Change the Analysis: A New Trial Is Possible.

Mr. Facteau and Mr. Fabian's rights under the Fifth Amendment remain fully intact because the trial court has yet to rule upon their post-trial motions, no final judgment of conviction has been entered, and no sentence has been imposed. Mr. Facteau and Mr. Fabian thus remain in jeopardy and could be retried on the same charges of conviction if their post-trial motion is granted or any appeal is successful. Thus, each defendant's "constitutional privilege [against self-incrimination] remains unimpaired." *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (Fifth Amendment privilege not extinguished until "the sentence has been fixed and the judgment of conviction has become final"); *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004) ("We have held in no uncertain terms that a defendant's right to invoke the Fifth Amendment as to events for which he has been convicted extends to the period during which the conviction is pending appeal."); *United States v. Duchi*, 944 F.2d 391, 394 (8th Cir. 1991) ("[T]he Fifth Amendment [privilege] continues until the time for appeal has expired or until the conviction has been affirmed on appeal."). Mr. Facteau and Mr. Fabian's respective rights under the Fifth Amendment are no less available to them now than they were before and during trial.

## III. A Deposition of Mr. Facteau or Mr. Fabian Would Be Disproportionate to the Needs of the Case.

There is no valid reason to subject non-parties to depositions designed to waste hours of time repeatedly invoking the Fifth Amendment. *See Cowans*, 2007 WL 28419, at *2 (permitting a general invocation of privilege in part because "it would amount to harassment and only serve to unreasonably annoy and embarrass the defendant[-witness] . . . should the defendant be subjected to two hours (or more) of questions to which the defendant would be validly asserting his rights against self-incrimination." (citation omitted) (omission in original)); *accord United*

9

*States v. McCallister*, 693 F.3d 572, 583 (6th Cir. 2012) ("[I]n instances where the witness has a clear entitlement to claim the privilege, forcing the witness to take the stand would be 'futile and thus unnecessary.'" (quoting *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009))). As in *Cowans*, the only end served by forcing Mr. Facteau and Mr. Fabian to sit for a deposition while under indictment would be to harass and annoy the two non-party witnesses.

What is more, deposition testimony from Mr. Facteau and Mr. Fabian (or their document productions) can hardly be important in resolving the issues in this case where Plaintiff sat on her hands until ten days before the close of discovery to issue the subpoenas. Plaintiff has been in contact with counsel for Mr. Facteau since at least April 2017 and has known since at least March 2018 that Mr. Facteau intended to challenge any deposition subpoena on Fifth Amendment grounds. Plaintiff has known since at least May 2018 that Mr. Fabian would take the same position.[2] That Plaintiff waited until ten days before the (already extended) fact discovery deadline to try to compel their testimony and burden them with an eleventh-hour document production demonstrates that Plaintiff herself does not consider whatever information Mr. Facteau or Mr. Fabian could provide sufficiently important. Neither should the Court.

Further, Plaintiff has ample alternative sources of testimony regarding the marketing of Stratus. The U.S. Attorney's Office in the criminal proceeding put on over a month of testimony about Stratus from approximately fifteen witnesses.[3] Nor can Plaintiff demonstrate that Mr. Facteau and Mr. Fabian have any unique or necessary knowledge of Stratus or Plaintiff's work

---

[2] At no point during these discussions with counsel for Mr. Facteau or Mr. Fabian did Plaintiff's counsel mention she would be seeking documents.

[3] Plaintiff attended the trial and is thus well aware of the identity of former co-workers who claim to have knowledge and/or testified at trial in 2016.

10

performance. *Cf. B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (quashing subpoena to union president because the plaintiff failed to demonstrate that the president's "deposition would yield otherwise inaccessible information"); *Dig. Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass. 1986) (holding that the defendant could not depose corporation's president instead of lower level employees because it was clear that the goal was to waste the deponent's time).

## IV. The Document Subpoenas Should Be Quashed Because They Are Untimely, Overly Broad, and Unduly Burdensome.

Plaintiff's document subpoenas seek "all communications" and "all documents" without regard to their relevance to any of the claims or defenses in this matter or the proportionality standard set forth in Fed. R. Civ. P. 26(b), and should thus be quashed. *See Heidelberg Americas Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 40-41 (1st Cir. 2003) (affirming district court's quashing of subpoena seeking "*all* documents" related to business affiliation from non-party as unduly burdensome and citing apparent imbalance between requestor's need for the documents and the burden on the non-party); *Allied World Assurance Co., (U.S.), Inc. v. Ameritox, Ltd.*, No. 14-cv-0557-BAS(KSC), 2014 WL 12513879, at *2 (S.D. Cal. July 11, 2014) (quashing subpoena seeking "all documents and communications" between non-party Ameritox and DOJ—despite that the subpoenaed documents "may capture some relevant information"—because it was "clearly overbroad in substance and scope, impose[d] an undue burden on non-party Ameritox, and most notably, were pursued by AWAC in a dilatory fashion").[4]

---

[4] Moreover, Fed. R. Civ. P. 26(b)(1) confines discovery to matters "relevant to the claim or defense of any party." Plaintiff's requests for "all communications" regarding Plaintiff regardless of time period, all communications regarding any claims brought by any whistleblower at any company regardless of time period, all communications with the non-

11

In particular, it is unduly burdensome on Mr. Facteau—who has not been with Acclarent since 2011—and Mr. Fabian—who has not been with the company since 2010—to search for and locate "all communications"—including text messages and emails—from nearly a decade ago, to the extent any even exist. What is more, presumably many of the documents Plaintiff seeks are available (and possibly already collected) from other sources, including the parties themselves.[5] The extraordinary burden placed upon non-parties Mr. Facteau and Mr. Fabian outweighs any potential relevance of any responsive communications or documents in their possession, which Plaintiff herself has made a low priority by delaying until the eleventh hour to seek them.

In particular, it is unduly burdensome on Mr. Facteau—who has not been with Acclarent since 2011—and Mr. Fabian—who has not been with the company since 2010—to search for and locate "all communications"—including text messages and emails—from nearly a decade ago, to the extent any even exist. What is more, presumably many of the documents Plaintiff seeks are available (and possibly already collected) from other sources, including the parties themselves.[5] The extraordinary burden placed upon non-parties Mr. Facteau and Mr. Fabian outweighs any potential relevance of any responsive communications or documents in their possession, which Plaintiff herself has made a low priority by delaying until the eleventh hour to seek them.

---

parties' business partners and co-workers over the last eight years regardless of the topic discussed, and all documents produced to the government regardless of relevance to this lawsuit, is *plainly* overbroad and encompasses copious irrelevant materials. The subpoena should therefore be quashed on grounds of overbreadth and undue burden. *See, e.g.*, *Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, No. 15-cv-10114-DJC, 2018 WL 1567604, at *4 (D. Mass. Mar. 30, 2018) (Cabell, M.J.) ("[I]t is clear that the subpoenas . . . were overbroad and requested information that is not relevant to this case. For example, the subpoenas to banks asking for records concerning [defendant] had no time limitation on them. . . . The subpoenas seeking bank records for the individual defendants were limited to records from 2009, however, the records sought were unlimited and certainly requested information that was irrelevant to this litigation."); *United Therapeutics*, 200 F. Supp. 3d at 279-80 (holding that "industry praise" request was "extremely overbroad" because it requested "every single document" regarding a particular topic because a subset of them contained relevant statements).

[5] *See, e.g.*, *Pebble Ltd. P'ship v. EPA*, 310 F.R.D. 575, 581 (D. Alaska 2015) (quashing third-party subpoenas for all communications between third parties and defendant EPA because obtaining those communications from a party was "more convenient, less burdensome, and less expensive than discovery from [the third parties]"); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena.").

## **CONCLUSION**

For these reasons, non-parties William Facteau and Patrick Fabian respectfully request that the Court quash the deposition and document subpoenas served on them by Plaintiff.

Respectfully submitted,

FOR NON-PARTY WILLIAM FACTEAU:

By: */s/ William T. Hassler*
MICHAEL J. PINEAULT (BBO No. 555314)
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110
Tel. (857) 445-0135
mpineault@clementspineault.com

WILLIAM T. HASSLER
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel. (202) 429-3000
whassler@steptoe.com
(*pro hac vice* application submitted)

Respectfully submitted,

FOR NON-PARTY PATRICK FABIAN:

By: */s/ Frank A. Libby, Jr.*
FRANK A. LIBBY, JR. (BBO No. 299110)
KRISTEN A. KEARNEY (BBO No. 669940)
LibbyHoopes, P.C.
399 Boylston Street Suite 200
Boston, MA 02116
Tel. (617) 338-9300
falibby@libbyhoopes.com
kkearney@libbyhoopes.com

Dated: August 6, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and will be emailed to counsel for non-party Patrick Fabian on August 6, 2018.

*/s/ William T. Hassler*

William T. Hassler